IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DEMETRIUS J. HAWKINS,      )
                        )
          Petitioner,       )
                        )
v                        )        Civil Action No. 2:08cv418-WHA
                        )               (WO)
UNITED STATES OF AMERICA,  )
                        )
          Respondent.    )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

## I.   INTRODUCTION

Demetrius J. Hawkins ("Hawkins") asks this court to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. On January 20, 2006, a federal grand jury returned a one-court indictment charging Hawkins and three codefendants[1] with conspiracy to possess with the intent to distribute approximately 700 pounds marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846.  Hawkins was tried with one of his codefendants, Terrence Cornelius, in September 2006.[2]  The case was given to the jury, and the jury returned with guilty verdicts as to both defendants.  However, the trial court declared a mistrial after one of the jurors, during the polling of the jury, hesitated to agree that his own verdict was guilty.

Hawkins and Cornelius were retried in February 2007.  At the conclusion of the case,

---

[1]Named in the indictment as Hawkins's codefendants were Terrence Cornelius, Craig Canady, and Troy Williams.

[2]Codefendants Canady and Williams pled guilty and testified at trial against Hawkins and Cornelius.

the jury again found Hawkins and Cornelius guilty. On May 15, 2007, the trial court

sentenced Hawkins to 140 months in prison.[3]  Hawkins appealed to the Eleventh Circuit, and

on March 6, 2008, the appellate court affirmed his conviction and sentence.[4]  Hawkins then

petitioned the United States Supreme Court for a writ of certiorari, which was denied on

October 6, 2008.  *See Cornelius v. United States*, __ U.S. ___, 129 S.Ct. 141 (2008).

On May 30, 2008, Hawkins filed this § 2255 motion, asserting that his trial counsel

rendered ineffective assistance in the following ways:

1.      Counsel failed to conduct effective cross-examination in order
        to impeach government witnesses Craig Canady and Agent John
        Rapp for providing perjured testimony.

2.      Counsel failed to argue that the government engaged in
        misconduct by knowingly using perjured testimony from
        Canady and Agent Rapp.

3.      Counsel failed to cross-examine Canady to impeach him based
        on his prior misdemeanor conviction for possession of
        marijuana.

4.      Counsel failed to move to exclude evidence of a car rental
        agreement that was disallowed at the first trial.

Hawkins later amended his § 2255 motion to add claims that his trial counsel was

---

[3]The trial court sentenced Cornelius to 70 months in prison.

[4]*See United States v. Hawkins*, 268 Fed.Appx. 824 (11th Cir. 2008). On appeal, Hawkins
claimed that (1) the district court improperly limited cross-examination of his codefendant Troy
Williams, who testified against him at trial; (2) the district court violated his right to confrontation
when it refused to admit evidence concerning the nature and number of Williams's prior
convictions; (3) his trial counsel rendered ineffective assistance. The Eleventh Circuit held that the
first two of these claims lacked merit and that the record was not sufficiently developed to allow for
review of Hawkins's allegations of ineffective assistance of counsel.

ineffective in the following ways:

1.  Counsel failed to protect his rights during the pretrial phase when he neglected to (a) assert his right to a speedy trial; (b) move for suppression of cellular telephone records; and (c) move for a severance of his trial from that of his codefendant Cornelius.

2.  Counsel failed to subject the government's case to meaningful adversarial testing during trial.

3.  Counsel failed to object at sentencing to the erroneous offense level attributed to him in the presentence report.

4.  The totality of circumstances and facts surrounding counsel's conduct resulted in a constructive denial of effective assistance of counsel.

The government responds that Hawkins's claims are meritless and that, therefore, they afford him no basis for relief. (Doc. Nos. 9 and 21.) Hawkins was allowed an opportunity to reply to the government's response and has done so. (Doc. Nos. 11 and 25.) After due consideration of Hawkins's § 2255 motion as amended, the supporting and opposing submissions, and the record in this case, the court concludes that an evidentiary hearing is not required and that, pursuant to Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*, the § 2255 motion should be denied.

## II.   DISCUSSION

### A.   *Standards for Reviewing Claims of Ineffective Assistance of Counsel*

A claim of ineffective assistance of counsel is governed by the standards of *Strickland v. Washington*, 466 U.S. 668 (1984). *Grossman v. McDonough*, 466 F.3d 1325, 1344 (11th

Cir. 2006).   Under *Strickland*'s two-part test, a petitioner must demonstrate (1) that "counsel's representation fell below an objective standard of reasonableness" and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (internal quotation marks omitted); *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Under the performance component of the *Strickland* inquiry, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688.   In other words, criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance. *Roe v. Flores-Ortega*, 528 U.S. 470, 476 (2000) (quoting *Strickland*, 466 U.S. at 687). In any ineffective assistance analysis, scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000); *see Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994). Review of an ineffective assistance of counsel claim is conducted from the perspective of defense counsel based on facts "as they were known to counsel at the time of the representation." *United States v. Teague*, 953 F.2d 1525, 1535 (11th Cir. 1992).   The court will "avoid second-guessing counsel's performance:  It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted).   Thus, "[g]iven the strong

4

presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." *Id.*

As noted above, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" *Strickland*, 466 U.S. at 694.  A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.  The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.  *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied.  *See Strickland*, 466 U.S. at 687.  Accordingly, once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been made.  *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998) ("if a defendant cannot satisfy the prejudice prong, the court need not address the performance prong").

**B.     *The Ineffective Assistance Claims***

**1.      Failure to Impeach Canady and Agent Rapp for "Perjured Testimony."**

Hawkins contends that his trial counsel rendered ineffective assistance by failing to cross-examine Craig Canady (a codefendant who testified for the government) and Agent John Rapp (a special agent with the DEA) effectively in order to impeach them based on their allegedly perjured testimony given during the proceedings against him.  (*See Doc. No. 1 at 5; Doc. No. 2 at 2-9.*)  In this regard, Hawkins points to what he says were material inconsistencies in testimony that Canaday and Agent Rapp provided during his first and second trials. He maintains that both Canady and Agent Rapp "gave two or more declarations under oath, one necessarily being false, in violation of Title 18 U.S.C. § 1623,"[5] and that such testimony was "material to the guilt or other relevant facts of [his] conviction and sentence." (*Doc. No 2 at 2.*)  According to Hawkins, his counsel "failed to cross-examine these witnesses, or produce the prior inconsistent statements for the jury, to impeach these vital witnesses at trial."  (*Id*. at 6.)

**a.      *Canady's Testimony***

Hawkins first points to what he says were inconsistencies in Canady's testimony about the locations to which Canady was supposed to deliver the marijuana he was hired to

---

[5]Title 18 U.S.C. 1623, one of the federal perjury statutes, bars presenting material false statements under oath before or ancillary to federal court or grand jury proceedings. To prove perjury under § 1623, the government must establish that an individual "(1) knowingly made (2) a materially false declaration (3) under oath (4) in a proceeding before or ancillary to any court of the United States." *United States v. Safa*, 484 F.3d 818, 821 (6th Cir. 2007).

6

transport. Hawkins asserts that Canady testified at his first trial that he (Canady) was initially hired, by Hawkins and codefendant Terrence Cornelius, to drive a truck with the marijuana from Houston, Texas, to Virginia Beach, Virginia, where he was supposed to off-load a portion of the marijuana, and then proceed to New Jersey, where the remainder of the drugs were to be delivered.[6]  At the second trial, Hawkins argues, Canady testified that he was hired to deliver the marijuana only to Atlanta and New Jersey.  Hawkins suggests that this difference in Canady's testimony amounted to perjury.

The record reflects that, at the first trial, during cross-examination by Cornelius's attorney, Canady testified that the people who hired him to transport the marijuana had initially wanted him to make one of the drop-offs in Virginia Beach, with a second drop-off in New Jersey, but that because he believed Virginia Beach was "off the beaten path" and a "big risk" as a drop-off point, he informed his hirers that he would make his first drop-off of marijuana in Atlanta, from which someone else would transport that part of the load to Virginia Beach.  (*Gov. Exh. M at 455-63.*)

At the second trial, Canady gave no testimony, either on direct or cross-examination, concerning his hirers' initial desire to have him make one of his drop-offs in Virginia Beach. However, consistent with his testimony at the first trial, Canady testified at the second trial that he had agreed to stop first in Atlanta and off-load some of the marijuana there, and then continue to New Jersey to drop off the remainder of the marijuana.  (*Gov. Exh. O at 259-61;*

---

[6]Canady testified that his payment for transporting and delivering the marijuana was supposed to be $20,000 and a portion of the marijuana.

*292-93.*)  Thus, there were no material inconsistencies in Canady's testimony about the locations to which he was supposed to deliver the marijuana – and certainly nothing that amounted to "perjury."  As a result, there was nothing in this regard upon which Hawkins's counsel could reasonably have based impeachment of Canady's credibility.  Hawkins does not establish the likely value of cross-examining Canady on this matter at the second trial. Because he fails to show that his counsel's performance was deficient in this regard or that he was prejudiced as a result of counsel's performance, he is not entitled to any relief based on this claim.  *See Strickland*, 466 U.S. at 687-89.

Hawkins also maintains that Canady gave inconsistent testimony in the two trials regarding the identity of a man Canady believed followed him in a car from Houston, Texas, until Canady was stopped and arrested by state troopers near Montgomery, Alabama.  At the first trial, Canady identified this man as an individual named "Pauly," whom Canady said was angry about being cut out of the drug deal by Cornelius.[7]  (*Gov. Exh. M at 450-54.*)  At the second trial, during cross-examination by Cornelius's counsel, Canady testified that he was not sure of the identity of the man who followed him because "[i]t was dark." (*Gov. Exh. O at 308.*)  Even if Canady's testimony about the man's identity were inconsistent in the two trials, neither the man's identity nor Canady's belief about the man's identity was a material

---

[7]Canady testified at the second trial that he originally met Pauly in December 2005 and that Pauly discussed doing a drug deal at that time.  (*See Gov. Exh. O at 279-82.*)  Canady stated that Pauly then introduced him to Cornelius for purposes of setting up the drug deal, in January 2006. (*Id. 264; 280-82.*)  According to Canady, after he was introduced to Cornelius, he had no further dealing with Pauly.  (*Id. at 280-82.*)

issue in the case.  Hawkins does not suggest any possible reason Canady may have had for lying about his belief about this individual's identity.  Thus, Canady's inconsistent testimony did not constitute perjury and did not provide substantial material for impeaching Canady. Accordingly, there was little reason for Hawkins's counsel to cross-examine Canady about the matter beyond the cross-examination conducted by Cornelius's counsel.  A reasonable lawyer could have concluded that any slight impeachment value from cross-examining Canady further on this matter would have been outweighed by the possibility of injecting a collateral issue into the case.

Hawkins further maintains that Canady gave inconsistent testimony regarding when codefendant Troy Williams – who accompanied Canady when the marijuana was picked up in Houston and was a passenger in Canady's truck when the two were stopped by state troopers in Alabama – first learned that the purpose of the trip to Houston was to pick up marijuana.  According to Hawkins, Canady testified at the first trial that Williams was with him at Hawkins's Atlanta residence when he was initially instructed, by Hawkins and Cornelius, to drive his truck to Texas to pick up the marijuana. However, Hawkins maintains that Canady testified at the second trial that Williams first learned about the plan to pick up and transport the drugs only after he and Canady were on their way to Houston in Canady's truck.

A review of the record shows that although Canady, at the first trial, initially testified that Williams was at Hawkins's residence when Canady was instructed by Hawkins and

Cornelius to drive to Houston to pick up the marijuana, Canady did not state that Williams was actually present to hear Hawkins and Cornelius give him these instructions or that Williams participated in any discussions about the plan that took place at Hawkins's residence.  (*See Gov. Exh. M at 337-38.*)   Moreover, shortly thereafter in his testimony at the first trial, Canady clarified that Williams did not know of the purpose of the trip to Houston until the two men arrived in Texas. (*Id.*) At the second trial, Canady gave no testimony regarding when Williams first learned about the purpose of the trip to Houston. (*See Gov. Exh. O at 247-310.*)  Thus, notwithstanding Hawkins's claim, the record fails to establish that Canady gave inconsistent testimony during the first trial, or that Canady's testimony in this regard at the second trial was inconsistent with his testimony at the first trial.  Finally, Hawkins has not shown how Canady's testimony in this regard concerned a material issue in the case.  The record does not support Hawkins's allegations of perjury. Consequently, Hawkins's counsel was not ineffective for failing to impeach Canady on this ground.

### b.   *Agent Rapp's Testimony*

Hawkins claims that testimony by DEA Agent John Rapp given at the second trial contradicted testimony that Agent Rapp gave at the first trial.  He specifically alleges that Agent Rapp's testimony at the second trial that Hawkins gave him a lengthy statement concerning his involvement in the conspiracy was inconsistent with his testimony at the first trial that another DEA Agent, Keith Cromer, was responsible for questioning Hawkins and

10

that Hawkins provided no cooperation.

The record reflects that, at the first trial, Agent Rapp testified that Agent Cromer read Hawkins and Cornelius their rights and "initiated almost all of the questioning." (*Gov. Exh. L at 155.*) However, Agent Rapp testified that he too was present during the questioning of the men. (*Id. at 154-55; 195.*) While, later in his testimony at the first trial, Agent Rapp referred to a lack of cooperation by Hawkins and Cornelius (*see id. at 176-77*), it is apparent from the context of his testimony that such lack of cooperation came about after Hawkins and Cornelius had at least admitted their involvement in the drug conspiracy and that some of the lack of cooperation Agent Rapp referred to consisted of the defendants' failure to admit to the entire scope of the conspiracy and the fact that some details in the defendants' statements did not check out. (*See id. at 299-303.*) Agent Cromer also testified at the first trial that Agent Rapp was present during, and participated in, the questioning of Hawkins and Cornelius and that Agent Rapp transcribed the defendants' statements on a report form used by the DEA. (*See id. at 257-62; 268-81*) In addition, Agent Cromer testified to the content of the inculpatory statements provided by Hawkins and Cornelius. (*Id. at 262-67.*)

At the second trial, Agent Rapp testified – consistent with his testimony at the first trial – that Agent Cromer read Hawkins and Cornelius their rights before they were questioned. (*Gov. Exh. N at 133-34.*) Then, referring to the reports containing his transcriptions of the defendants' statements, Agent Rapp testified at length about the contents of the statements given by Hawkins and Cornelius. (*See id. at 134-63.*) Nothing

11

in Agent Rapp's testimony at the second trial contradicted his pertinent testimony at the first trial, the gist of which was that he was present with Agent Cromer when Hawkins and Cornelius were questioned; that Agent Cromer did most of the questioning; that he (Agent Rapp) took notes during the questioning and transcribed the statements by Hawkins and Cornelius on DEA report forms; and that Hawkins and Cornelius admitted their involvement in the drug conspiracy but did not cooperate with investigators.[8]  Again, Hawkins does not suggest any possible reason Agent Rapp may have had to provide misleading testimony about whether it was he or Agent Rapp who actually put questions to Hawkins and Cornelius when they were interrogated.  Agent Rapp's testimony in the second trial focused on the content of the defendants' statements; it was undisputed that those statements were given in his presence.  Hawkins fails to establish the likely value of cross-examining Agent Rapp on this matter.  The record does not support Hawkins's claim that Agent Rapp gave inconsistent testimony, much less that the testimony was perjured.  Therefore, Hawkins's counsel was not ineffective for failing to challenge Agent Rapp's testimony on this ground.

Finally, Hawkins asserts that there was an internal inconsistency in Agent Rapp's testimony at the second trial concerning Hawkins's knowledge of Canady's name. The record reflects that Agent Rapp initially testified that Hawkins told him that he was supposed to meet up with Cornelius and a man named Mr. Canady at a restaurant in Atlanta to transfer

---

[8]Agent Cromer also testified at the second trial.  His testimony was consistent with his testimony in the first trial and with that of Agent Rapp in both proceedings.  (*See Gov. Exh. N at 219-32.*)

part of the marijuana to another vehicle.  (*Gov. Exh. N at 137.*)  However, Agent Rapp then referred to his report containing Hawkins's transcribed statement and corrected his testimony to state that Hawkins actually told him that he had not known Canady by name at the time and had known him only as Cornelius's friend.  (*Id. at 138.*)  Thus, Agent Rapp openly – and almost immediately – acknowledged that his testimony that Hawkins knew Canady's name was incorrect, and he corrected that testimony before the jury.  This did not constitute perjury, and there was no basis for Hawkins's counsel to allege as much or to seek to impeach Agent Rapp based on this matter.

For the reasons set forth above, Hawkins has not demonstrated that his counsel rendered ineffective assistance in his cross-examination of Canady and Agent Rapp or in failing to impeach them based on their alleged perjury.  Therefore, Hawkins is not entitled to relief based on this claim of ineffective assistance of counsel.

### 2.    Failure to Object to Government's Misconduct in Use of Perjured Testimony

Hawkins also contends that his trial counsel was ineffective for failing to challenge what he says was the government's knowing use of perjured testimony from Canady and Agent Rapp.  (*See Doc. No. 1 at 6; Doc. No. 2 at 9-11.*)  However, as discussed above, Hawkins fails to demonstrate that either Canady or Agent Rapp knowingly gave materially false testimony.  Thus, he cannot demonstrate that the government knowingly used perjured testimony in obtaining his conviction.  "It is axiomatic that only the knowing use of false testimony constitutes a due process violation." *United States v. Michael*, 17 F.3d 1383, 1385

13

(11th Cir. 1994). Neither inconsistencies nor conflicts in statements given or testimony provided by a particular witness establishes that such accounts were perjured. *Id.* Because Hawkins has not established that Canady and Agent Rapp gave perjured testimony, he cannot show that his counsel was ineffective for failing to argue that the government used perjured testimony to convict him. Consequently, he is not entitled to any relief based on this claim of ineffective assistance of counsel.

### 3. Failure to Impeach Canady Based on Misdemeanor Conviction

Hawkins contends that his trial counsel rendered ineffective assistance by failing to impeach Craig Canady during cross-examination based on Canady's prior misdemeanor conviction for marijuana possession. (*See Doc. No. 1 at 8; Doc. No. 2 at 11-13.*)

At Hawkins's first trial, counsel for codefendant Cornelius asked Canady during cross-examination if he had lied to one of the Alabama State Troopers who stopped his truck about whether there was marijuana in his truck and about whether he had ever been involved in an arrest for marijuana. (*Gov. Exh. M at 365-66.*) Although counsel for the government objected to defense counsel's question about Canady's record, the trial court allowed the question for the limited purpose of indicating what Canady had told the state trooper, not as proof of the fact of Canady's conviction. (*Id.*) Canady then testified that although he initially lied to the state trooper about his record, he later admitted to the trooper that he had prior misdemeanors. (*Id.* at 366.)

Hawkins complains that his counsel did not seek to impeach Canady at the second

14

trial based on the misdemeanor marijuana conviction.  However, Canady's misdemeanor

conviction was not admissible for impeachment purposes under Fed.R.Evid. 609,[9] and thus

there was no basis for Hawkins's counsel to seek to elicit evidence of that conviction during

cross-examination of Canady at the second trial.  In an ineffective assistance analysis, a

defendant is not prejudiced where counsel's performance does not deprive the defendant of

a substantive or procedural right to which the law entitles him.  *See Lockhart v. Fretwell*,

506 U.S. 364, 372 (1993).  Hawkins was not entitled under the law to use Canady's

misdemeanor conviction to impeach his credibility.  Moreover, the record reflects that when

counsel for codefendant Cornelius attempted at the second trial to elicit evidence about

Canady's misdemeanor record, the trial court interrupted counsel and instructed him that the

court would not allow any questioning concerning Canady's prior misdemeanors.  (*Gov.*

*Exh. O at 270-71.*)  Hawkins fails to show how his own counsel's performance was deficient

with respect to this issue.  Therefore, he is not entitled to any relief based on this claim of

ineffective assistance of counsel.[10]

### 4.    Failure to Move to Exclude Car Rental Agreement

Hawkins argues that his trial counsel was ineffective for failing to move to exclude

---

[9]For the purpose of attacking the credibility of a non-defendant witness, Fed.R.Evid 609 allows evidence of the witness's prior conviction to be admitted if (1) the conviction is for a crime punishable by death or imprisonment in excess of one year or (2) it can readily be determined that establishing the elements of the crime required proof of an act of dishonesty or false statement by the witness.  *See* Fed.R.Evid. 609(a)(1)-(2).

[10]This court finds that, in any event, the impeachment value of Canady's misdemeanor conviction would have been negligible as compared to the evidence of Canady's felony plea deal in the instant case, about which Canady was questioned extensively at the second trial.

evidence of a car rental agreement indicating that around the time the marijuana involved in the deal was purchased in Houston, his codefendant Cornelius rented a Jeep Grand Cherokee in Atlanta and returned the vehicle less than a week later with over 2,000 miles having been accumulated between the time of its rental and return. (*See Doc. No. 1 at 9; Doc. No. 2 at 13-16.*)

According to Hawkins, evidence of the car rental agreement was excluded from his first trial based on a motion *in limine* filed by Cornelius's attorney, who argued that the government had failed to provide the defense with a copy of the document during discovery. The record reflects that although the car rental agreement was excluded from a pretrial suppression hearing on this ground, the defense received a copy of the document by the time the first trial began; however, the government chose not to introduce this evidence at the first trial. Moreover, this evidence was not subject to suppression at the second trial, because the defense had it in hand well before the second trial began. Thus, there was no basis for Hawkins's counsel to move for exclusion of the car rental agreement from the second trial.[11] Consequently, Hawkins's counsel was not ineffective for failing to seek to exclude the

---

[11]In an affidavit filed with this court, Hawkins's trial counsel avers as follows with respect to this issue:

> Hawkins asserts that I failed to prohibit evidence linking him to Houston. That evidence came in because it was shown to defense counsel prior to trial, unlike before, when it had not been given. The evidence (a rental receipt for a Jeep) pointed solely to Hawkins's co-defendant, so I had no objection to make as I had no standing or obvious reason to object to evidence that did not implicate Hawkins.

(*Doc. No. 6 at 4.*)

evidence from the second trial, and Hawkins is not entitled to any relief based on this claim.

### 5.    Cumulative Effect of Alleged Errors

Hawkins contends that his trial counsel's alleged errors with respect to the matters asserted above, considered cumulatively, amounted to ineffective assistance of counsel. (*See Doc. No. 2 at 17*.)  This claim does not warrant collateral relief.  Because none of the issues raised by Hawkins could be considered error, the court finds that the cumulative error analysis does not apply.  *See Fisher v. Angelone*, 163 F.3d 835, 852 (4th Cir. 1998).  Simply put, individual allegations of attorney ineffectiveness found not to be error may not be strung together to form a constitutional violation. *See Id*. at 853 n.9 ("[L]egitimate cumulative-error analysis evaluates only the effect of matters actually determined to be constitutional error, not the cumulative effect of all of counsel's actions deemed deficient.").  In the absence of any error, there can be no cumulative error.  *See United States v. Hall*, 455 F.3d 508, 520 (5th Cir. 2006); *see also Yohey v. Collins*, 985 F.2d 222, 229 (5th Cir. 1993) (stating that because certain alleged errors did not rise to constitutionally ineffective assistance of counsel, and because certain other claims were meritless, a petitioner had "presented nothing to cumulate").  Because this court has found no error in trial counsel's performance with respect to the matters asserted above, Hawkins's cumulative error claim also fails.

### 6.    Failure to Protect Right to Speedy Trial

Hawkins contends that his trial counsel rendered ineffective assistance by failing to protect his right to a speedy trial between the mistrial declared at the conclusion of his first

trial and the commencement of his second trial.  (*See Doc. No. 15 at 11-16.*)  Hawkins

asserts that, following the mistrial, he advised his attorney that he wanted to exercise his

right to a speedy trial as to a retrial, and that he did not want counsel to file for any

continuances in the proceedings.  (*See, e.g., Doc. No. 15 at 12.*)  According to Hawkins, his

counsel failed to assert his right to a speedy trial and moved to continue the second trial or

acquiesced in motions for a continuance that were filed by counsel for codefendant Terrence

Cornelius.[12]  (*Id. at 12-15.*)

Addressing these allegations in an affidavit filed with this court, Hawkins's trial

counsel, Malcolm R. Newman, avers that he "told Petitioner about every Motion to Continue

[filed in the case] and he agreed with my actions." (*Doc. No. 20 at 3.*)  According to

Newman, "we both wanted to review the transcript [from the first trial] and, secondly,

[Hawkins] was not eager to go back to Court before the Thanksgiving or Christmas holidays

... in the event that he was found guilty."[13]  (*Id.*)  Newman attached to his affidavit an

undated copy of a speedy trial waiver signed by Hawkins in which Hawkins agreed to waive

his right to a speedy trial and consented to a continuance of his retrial from the October 2006

term to the November 2006 term.[14]  (*See Exh. 2 attached to Doc. No. 20.*)  It does not appear

---

[12]The mistrial in the first trial was declared on September 28, 2006.  Following two continuances, the second trial commenced on February 5, 2007.

[13]Newman states that while the motions to continue were actually filed by other individuals, he did not oppose the motions, "as I saw no harm to [Hawkins] if they were granted." (*Doc. No. 20 at 3-4.*)

[14]Newman states that the speedy trial waiver was prepared by a member of his firm.  (*Doc.*
(continued...)

that this waiver was filed with the trial court, as it is not contained in the record from the criminal proceedings.  The record does, however, contain a written speedy trial waiver, with the electronic signatures of Hawkins and Newman, that was filed with the trial court on November 21, 2006, in which Hawkins consented to a continuance of his retrial beyond the November 2006 term.[15]  (*See Criminal Case No. 2:06cr12-UWC - Doc. No. 159.*)  Also in the record is a written speedy trial waiver, filed on February 22, 2006 (prior to the first trial), and signed by Hawkins and Newman, in which Hawkins agreed to waive his right to a speedy trial and stated that he was doing so "knowingly, voluntarily and, intelligently" after receiving a "full and complete explanation of each and every one [of his rights] ... by my attorney."[16]  (*Criminal Case No. 2:06cr12-UWC.*)

The record further reflects that on October 2, 2006, Cornelius's counsel filed a motion to continue the retrial of Hawkins and Cornelius from the October 2006 term to the November 2006 term because of conflicts in the trial schedule of Cornelius's counsel that would prevent him from effectively preparing for the retrial.  (*See Criminal Case No. 2:06cr12-UWC - Doc. No. 133.*)  Although the motion was signed only by Cornelius's

---

[14](...continued)
*No. 20 at 3.*)  The waiver contains only Hawkins's signature. (*Exh. 2 attached to Doc. No. 20.*)  For his part, Hawkins suggests that his signature on the waiver may have been forged, stating that there is no proof he actually signed the document and that "[a]s this Court is well aware, signatures can be cut and pasted on any document." (*Doc. No. 25 at 2.*)

[15]Hawkins maintains that this waiver was filed without his knowledge or consent. (*See Doc. No. 15 at 2; Doc. No. 25 at 2-4.*)

[16]Due apparently to a clerical error, this document was not assigned a docket number.

counsel, it stated that both defendants desired a continuance.  (*Id. at 1.*)  On October 16, 2006, the trial court granted the requested continuance, finding that the ends of justice served by continuing the case outweighed the interests of the public and the defendants in a speedy trial.  (*See Criminal Case No. 2:06cr12-UWC - Doc. No. 135.*)  In granting the continuance, the trial court cited the holding in *United States v. Davenport*, 935 F.2d 1223, 1235 (11th Cir. 1991), that the need for allowing counsel a reasonable time for effective trial preparation is a significant factor for granting an "ends of justice" continuance under the Speedy Trial Act.

A second motion for a continuance, styled as a Joint Motion for Continuance and signed by counsel for both Hawkins and Cornelius as well as by counsel for the government, was filed on November 20, 2006.  (*Id. - Doc. No. 157.*)  The motion requested a continuance from the November 2006 term to the March 2007 term, on grounds that both a chief government witness and counsel for Cornelius had scheduling conflicts and that Hawkins's counsel, Mr. Newman, was having "logistical problems in meeting with his client due to scheduling and reviewing the trial transcript."[17]  (*Id.*)  On November 22, 2006, the trial court granted the requested continuance, finding, as it had with the first requested continuance, that the ends of justice served by continuing the case outweighed the interests of the public and the defendants in a speedy trial.  (*Id.*)  The trial court again cited the *Davenport* holding that the need for allowing counsel a reasonable time for trial preparation is a significant factor for granting such a continuance.  *See* 935 F.2d at 1235.

---

[17]The record reflects that the transcript of the first trial of Hawkins and Cornelius was completed on October 25, 2006.

The record, as recounted above, simply does not support Hawkins's claim that he wished to assert his right to a speedy trial.  Moreover, even if Hawkins had wanted to assert that right, the delay resulting from the "ends of justice" continuances granted by the trial court was excludable from the speedy-trial calculation. When that period of delay is excluded, the retrial was timely and within the requirements of the Speedy Trial Act.

Title 18 § 3161(e), part of the Speedy Trial Act, provides that a retrial shall commence within 70 days after the declaration of a mistrial.  *See* 18 U.S.C. § 3161(e).  Title 18 § 3161(h)(7)(A) provides that, for purposes of the Speed Trial Act, any period of delay resulting from a continuance granted on the basis of the trial court's findings that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial" shall be excluded in computing the time within which a trial must commence.  *See* 18 U.S.C. § 3161(h)(7)(A).  Section 3161(h)(7) permits reasonable delays caused by one codefendant in a joint trial to be attributed to all other codefendants.  *See Davenport*, 935 F.2d at 1236.  Consequently, there is no merit to Hawkins's argument that because he allegedly did not desire the continuances before the retrial, any delays attributable to his codefendant cannot be attributed to him.  In enacting the Speedy Trial Act, Congress found that the utility in having multi-defendant trials outweighs the desirability of severance to meet the 70-day time requirement.  *Davenport*, 935 F.2d at 1236.  Here, the mistrial in the first trial was declared on September 28, 2006.  The delay occasioned by the "ends of justice" continuances to allow defense counsel time to prepare for the retrial

encompassed the period of time between the granting of the first continuance, on October 16, 2006, and commencement of the retrial, on February 5, 2007. When that delay is excluded from the speedy-trial calculation, it is clear that the retrial was timely for purposes of the Speedy Trial Act.

Moreover, Hawkins does not demonstrate any prejudice with respect to this claim. Had the continuances not been granted in his case, Hawkins's alternative would have been to proceed to the retrial with counsel who may not have had a reasonable time to prepare his defense by consulting with him and reviewing the transcript of the first trial. Hawkins does not allege, much less demonstrate, that the outcome of the proceedings would have been different and to his advantage had the continuances not been granted. Hawkins fails to show that his counsel's performance was deficient in this regard, or that he was prejudiced as a result of counsel's performance. *Strickland*, 466 U.S. at 687-89. Therefore, Hawkins is not entitled to any relief based on this claim of ineffective assistance of counsel.

### 7.    Failure to Move to Suppress Cell Phone Record Evidence

Hawkins contends that his trial counsel was ineffective for failing to move to suppress testimony from a Cingular Wireless records custodian, Toby Boutwell, who testified at his second trial about call activity to and from Houston, Texas, in early January 2006, from a cellular telephone number that was identified as belonging to Hawkins. (*See Doc. No. 15 at 16-22.*) However, Hawkins fails to set forth any specific grounds upon which such testimony should have been suppressed. Although he does point to an instance in which

counsel for Cornelius was successful in excluding certain *other* evidence from the first trial, the successfully excluded evidence was unrelated to the evidence regarding Hawkins's cell phone that was admitted through Boutwell's testimony at the second trial, and the grounds upon which the different evidence was excluded from the first trial did not apply at the second trial and were clearly inapplicable to the evidence introduced through Boutwell's testimony.[18]  Boutwell did not testify at the first trial, nor did the government even attempt to introduce any evidence through him at the first trial. Under the circumstances, Hawkins has not demonstrated that his trial counsel's performance was deficient, or that he was prejudiced as a result of counsel's performance.  *Strickland*, 466 U.S. at 687-89.  Therefore, he is not entitled to any relief based on this claim.

### 8.    Failure to Move for Severance

Hawkins argues that his trial counsel was ineffective for failing to move for a severance of his trial from that of codefendant Cornelius.  (*See Doc. No. 15 at 22-24.*)

According to Hawkins, prior to the second trial, he informed his counsel, Mr. Newman, that Cornelius had offered to testify in his defense, but Newman told him that "Cornelius could not testify for him because they were being tried together." (*Doc. No. 15 at 22-23.*)  In support of this claim, Hawkins submits a copy of letter purportedly from Cornelius, dated June 3, 2007, in which Cornelius states that Hawkins was not involved in

---

[18]At the first trial, the government was questioning DEA Agent Rapp on redirect about a post-arrest statement made in relation to a cell phone connected to Cornelius when the trial court sustained an objection by the defense that the question was outside the scope of the direct and cross-examination of Agent Rapp.  (*See Gov. Exh. M at 195-97.*)

the drug conspiracy and that he "tried to clear [Hawkins's] name early on, but my lawyer advised me not to since I was going to trial." (*See Exh. E attached to Doc. No. 15*.)

For his part, Newman avers that he raised with Hawkins the problems with "going to trial saddled with Cornelius in October 2006" (before the second trial), but that Hawkins "opposed my suggestion." (*Doc. No. 2 at 4.*) In addition, Newman avers that "[a]t no time did I ever advise Mr. Hawkins that Cornelius could not testify on his behalf; any such suggestion is just plain silly." (*Id. at 4-5.*)

The statements by Cornelius in the letter submitted by Hawkins do not support Hawkins's contention that Cornelius would have testified in his defense. In fact, by Cornelius's own admission in the letter, Cornelius followed his counsel's advice *not* to clear Hawkins's name because he was also being tried for the conspiracy, and testimony on behalf of Hawkins may not have been in his own interest. In this regard, Cornelius's letter is little more than an after-the-fact expression of regret that he chose not to attempt to "clear" Hawkins. Notably, moreover, while Cornelius states in the letter that Hawkins was not involved in the conspiracy, Cornelius does not plainly acknowledge his own guilt as to the offense. Thus, the letter is not even necessarily against Cornelius's penal interests (and even less so since Cornelius had already been convicted by the time he authored the letter). Under the circumstances, Hawkins's allegations fail to establish that Cornelius would indeed have testified on his behalf at a separate trial and fail also to show the substance of the exonerative testimony Cornelius would have provided. *See United States v. Machado*, 804 F.2d 1537,

1544 (11th Cir. 1986) ("A defendant who moves for severance in order to enable him to obtain favorable testimony from a codefendant must show: (1) a bona fide need for the testimony; (2) the substance of the desired testimony; (3) the exculpatory nature and effect of the desired testimony; and (4) that the codefendant would indeed have testified at a separate trial.")  Hawkins's conclusory assertions fail to show that his trial counsel's failure to move for a severance of his trial from that of Cornelius was professionally unreasonable or that he was prejudiced as a result of counsel's performance.  *Strickland*, 466 U.S. at 687-89.  Therefore, he is not entitled to any relief based on this claim of ineffective assistance of counsel.

### 9. Failure to Subject Government's Case to Meaningful Adversarial Testing

Hawkins claims that his trial counsel, Mr. Newman, failed to protect his rights by subjecting the government's case to meaningful adversarial testing during his trial.  (*See Doc. No. 15 at 24-32.*)

In support of this claim, Hawkins points to what he characterizes as "blatant inconsistencies" between DEA Agent Rapp's testimony at the first trial and the second trial, matters he argues that attorney Newman should have seized upon as grounds to impeach Agent Rapp's testimony.  In making this claim, Hawkins exaggerates – sometimes wildly – the supposed differences between Agent Rapp's testimony at the two trials.  In a number of instances cited by Hawkins, the alleged inconsistencies are minor and inconsequential; in other instances, the matters cited do not even constitute actual inconsistencies.  Much of

25

the "inconsistent" testimony adduced by Hawkins in support of this claim has already been discussed in Part II.B.1(b) of this Recommendation, in which this court has concluded that Hawkins has failed to show how Agent Rapp's testimony was materially different in the two trials. For instance, Hawkins complains that Agent Rapp's testimony at the second trial indicated – contrary to his testimony at the first trial – that Hawkins gave his post-arrest statement to Agent Rapp, and not to Agent Cromer. However, the record reflects that Agent Rapp's pertinent testimony at the second trial focused not on who actually questioned Hawkins (Agent Cromer or Agent Rapp), but rather on the contents of Hawkins's statement. Agent Rapp testified, consistently, at both trials that he took notes as Hawkins gave his statement and transcribed the statement on a report form used by the DEA. Moreover, it is clear from Agent Rapp's testimony at both trials that Agent Cromer was present when Hawkins gave his statement. Nowhere in his testimony at the second trial did Agent Rapp state that only he questioned Hawkins. Moreover, nowhere in his testimony at the *first* trial did he state that he did not participate at all in the questioning of Hawkins. In his own testimony, Agent Cromer stated that Agent Rapp took part in the questioning of Hawkins. Thus, Hawkins' contention is without merit.

Hawkins also attempts to make much of the fact that Agent Rapp gave testimony at the first trial suggesting that Hawkins was Mirandized shortly *after* Cornelius received his *Miranda* warnings, while, at the second trial, Agent Rapp testified that Hawkins was Mirandized before Cornelius. This discrepancy in Agent Rapp's testimony was immaterial

26

to any issue in the case, and even if it could have been pointed to by Hawkins's counsel in an attempt to challenge Agent Rapp's recollection of events, it was of limited impeachment value.[19]   As to Hawkins's suggestion that the discrepancy indicates that, as a whole, Agent Rapp's testimony concerning Hawkins's statement was false, this court finds such a minor testimonial discrepancy to be insignificant when viewed in light of the entirety of Agent Rapp's and Agent Comer's testimony relating to the circumstances under which Hawkins and Cornelius were questioned and the contents of the two defendants' statements.  Hawkins falls well short of meeting his burden of showing that he was prejudiced by counsel's performance in this regard.  For these reasons, this court concludes that counsel's failure to challenge this and the other alleged inconsistencies in Agent Rapp's testimony asserted by Hawkins did not constitute ineffective assistance of counsel.

As further support for his claim that attorney Newman failed to subject the government's case to meaningful adversarial testing, Hawkins asserts that the trial court found it necessary to intervene on his behalf during the trial in order to protect his rights. In this regard, Hawkins points to three instances where the trial court objected *sua sponte* to questions posed to witnesses by the prosecutor.  In the first cited instance, the trial court intervened when the prosecutor asked a government witness about the manner in which the marijuana was supposedly delivered to Canady's truck in Houston.  (*Gov. Exh. O at 87.*) When the court asked the prosecutor, "Isn't this hearsay?" the prosecutor agreed and

---

[19]Hawkins does not suggest any reason Agent Rapp would have had to dissemble on the question of which defendant was Mirandized first.

withdrew his question.  (*Id.*)  Neither defense counsel objected to the prosecutor's question before the court intervened, possibly because the prosecutor's question did not touch on matters directly incriminating of either defendant.  In another instance of the trial court's intervention cited by Hawkins, the court stated, "The objection is sustained," when a government witness referred to his own experience and training when testifying about his identification of Cornelius.  (*Gov. Exh. O at 201*.)  The witness's testimony was not directly inculpatory of Hawkins.  In the third example cited by Hawkins, the trial court sustained its own objection to what it considered a leading question the prosecutor had asked a witness about the return of a rental car.  (*Gov. Exh. O at 246.*)  Once again, the matter did not relate directly to Hawkins.  Thus, in each of the instances of trial court intervention cited by Hawkins, his counsel had little to gain on Hawkins behalf by asserting an objection.

For the reasons indicated above, Hawkins falls far short of demonstrating that his trial counsel failed to protect his rights by subjecting the government's case to meaningful adversarial testing.  Moreover, he fails to show that counsel's performance with regard to the matters asserted was deficient, or that he was prejudiced by counsel's performance. Therefore, he is not entitled to any relief based on ths claim.

### 10.    Failure to Object to Offense Level in Presentence Report

Hawkins contends that his trial counsel, Mr. Newman, rendered ineffective assistance at his sentencing by failing to object to the erroneous offense level attributed to him in the presentence report.  (*See Doc. No. 15 at 32-36.*)

Because Hawkins's instant conviction was for a controlled substance offense and he had two prior felony convictions for crimes of violence, the United States Probation Office, in Hawkins's presentence report, determined that he qualified as a career offender under U.S.S.G. § 4B1.1.  *See* U.S.S.G. § 4B1.1(a).  (*Presentence Investigation Report ("PSI") at 5, ¶26.*)  Under U.S.S.G. § 4B1.1(b), the offense level provided by the career offender subsection or the "otherwise applicable" offense level – whichever is greater –  must be applied to determine a defendant's offense level under the Sentencing Guidelines.  *See* U.S.S.G. § 4B1.1(b).  The table in that subsection provides that if the statutory maximum for the offense is 25 years or more, then the offense level is 34.  *See* U.S.S.G. § 4B1.1(b)(B).  Because the indictment under which Hawkins was convicted charged him with conspiracy to possess with the intent to distribute approximately 700 pounds of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846, the Probation Office found that Hawkins's offense was subject to the statutory maximum of 40 years provided by 21 U.S.C. § 841(b)(1)(B)(vii) (distribution of 100 kilograms or more of marijuana subjects the offender to a maximum penalty of 40 years in prison).  Therefore, the Probation Office concluded that an offense level of 34, under the career offender table, applied to Hawkins, as this was greater than the "otherwise applicable" offense level of 24 (i.e., without application of the career offender provision).  In every case under the career offender subsection, the offender's criminal history category "shall be Category VI."  *See* U.S.S.G. § 4B1.1(b)(B).  Applying Hawkins's calculated offense level of 34 to Criminal History Category VI in the Sentencing Guidelines,

the Probation Office calculated Hawkins's guideline sentence range as 262 to 327 months, and this was the sentence recommended in the PSI.  (See *PSI at 11, ¶60.*)

The jury in Hawkins's case was given a special verdict form that asked the jury, after it found Hawkins guilty as charged in the indictment, to determine the amount of marijuana he conspired to possess with the intent to distribute.[20] (*See Criminal Case No. 2:06cr12-UWC - Doc. No. 179.*)  The jury found Hawkins guilty as charged, and determined that he was responsible for 200 pounds of marijuana.  (*Id.*)  Hawkins argues that because the jury found him responsible for only 200 pounds of the marijuana involved in the conspiracy, his offense was subject to the statutory maximum of 20 years under 21 U.S.C. § 841(b)(1)(C), rather than the 40-year maximum of § 841(b)(1)(B)(vii), and that, therefore, the offense level applicable to him under the career offender table at U.S.S.G. § 4B1.1(b) should have been 32, rather than 34 as found in the PSI prepared by the Probation Office.  *See* U.S.S.G. § 4B1.1(b)(C).  When an offense level of 32 is applied to Criminal History Category VI, the resulting guideline sentence range is 210 to 262 months.  Hawkins contends that his counsel was ineffective for failing to object to the finding in the PSI that his offense level was 34 and not 32, as he argues it should have been.

Even accepting, as Hawkins argues, that for purposes of the career offender provisions of U.S.S.G. § 4B1.1(b), the "statutory maximum" is not based on the amount of

---

[20]The special verdict form set forth four options as to the amount of marijuana the jury found Hawkins had conspired to possess with the intent to distribute: (1) 669 pounds; (2) 210-280 pounds; (3) 200 pounds; or (4) 20 pounds.  (*Criminal Case No. 2:06cr12-UWC - Doc. No. 179.*)

controlled substance involved in the offense of conviction and the conspiracy as a whole, but rather is determined by the jury's finding on a special verdict form as to the amount of controlled substance with which the defendant was involved, Hawkins is not entitled to relief based on this claim. After considering 18 U.S.C. § 3553 and upon finding that the sentence suggested by the Sentencing Guidelines was greater than necessary to comply with the statutory purposes of sentencing, the trial court sentenced Hawkins to 140 months in prison, varying downward substantially from the sentence called for under the Sentencing Guidelines – whether the guideline sentence range was based on an offense level of 34 (providing a range of from 262 to 327 months for career offenders) or an offense level of 32 (providing a range of from 210 to 262 months for career offenders). (*See Sentence Hearing at 20-21.*) The trial court found that imposition of a guideline range sentence would create an unwarranted disparity as between Hawkins's sentence and the sentences of the various defendants involved in the case. (*Id. at 21.*) The court specifically found that a 140-month sentence was reasonable when considering the nature and circumstances of the crime and Hawkins's criminal history and characteristics; that the sentence reflected the seriousness of the crime; that it promoted respect for the law; that it provided just punishment for the crime; and that it afforded adequate deterrence to criminal conduct. (*Id. at 20-21.*)

The sentence actually imposed by the court – 140 months – was 70 months lower than the 210-month sentence provided for at the bottom end of the guideline range for career offenders with an offense level of 32. Thus, even if Hawkins's counsel had objected to the

guideline offense level of 34 attributed to Hawkins in the PSI and had then prevailed with the argument that the correct guideline offense level for Hawkins should have been 32, Hawkins cannot show that he would not have received any benefit from counsel's actions. Stated differently, Hawkins has not demonstrated that he was prejudiced by his counsel's failure to argue for an offense level of 32 when the trial court varied downward by 70 months from the lowest sentence provided by the Sentencing Guidelines for a career offender with an offense level of 32.  Hawkins engages in pure speculation when he suggests that the trial court might have varied downward even further, below the 140-month sentence that it imposed, had it been persuaded that Hawkins's correct offense level was 32 and that the correct guideline range was therefore 210 to 262 months.  Because Hawkins cannot demonstrate prejudice resulting from his counsel's performance in this regard, he is not entitled to any relief based on this claim of ineffective assistance of counsel.  *Strickland*, 466 U.S. at 687.

### 11.    Constructive Denial of Effective Assistance of Counsel

Hawkins argues that the totality of circumstances and facts surrounding his trial counsel's conduct resulted in a "constructive denial of effective assistance of counsel." (*See Doc. No. 15 at 37-38.*)  Hawkins fails to sustain his assertion that his counsel committed errors that, when considered cumulatively, amounted to ineffective assistance of counsel. To the extent Hawkins's claim implicates *United States v. Cronic*, 466 U.S. 648 (1984), he likewise is entitled to no relief.  In *Cronic*, the Supreme Court found that there are

"circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case in unjustified."  466 U.S. at 658.  In these limited circumstances, a defendant need not make the specific showing of prejudice required by *Strickland*.  *Cronic*, 466 U.S. at 659.  An ineffective assistance of counsel claim should be analyzed under *Cronic*, rather than *Strickland*, only if the defendant either "is denied counsel at a critical stage of his trial or if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing."  *Hunter v. Moore*, 304 F.3d 1066, 1069 (11th Cir. 2002).  Hawkins was represented by counsel at every critical stage of the proceedings, and the record reflects that meaningful adversarial testing of the government's case took place at his trial.  Therefore, Hawkins is not entitled to any relief based on this claim.

## III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Hawkins be denied, as the claims therein entitle him to no relief.

It is further

ORDERED that the parties shall file any objections to this Recommendation on or before **September 15, 2010.** A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District

Court of issues covered in the Recommendation and shall bar the party from attacking on

appeal factual findings accepted or adopted by the District Court except upon grounds of

plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See*

*Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of*

*Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

      Done, this 1st day of September, 2010.


                    /s/ Susan Russ Walker                
                    SUSAN RUSS WALKER
                    CHIEF UNITED STATES MAGISTRATE JUDGE